# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**ROBERT J. YOUNG COMPANY, LLC**,    )
*doing business as* RJ Young,    )
    )
   **Plaintiff,**    )
    )
**v.**    )   **Case No. 3:25-cv-00674**
    )   **Judge Aleta A. Trauger**
**ZACK HEMP, LLC and WYZE I, LLC**,    )
    )
   **Defendants.**    )

## <u>MEMORANDUM</u>

The plaintiff alleges that the defendants have not paid for the security equipment it installed in their stores, pursuant to contracts between the parties. The defendants move to dismiss, under both Rule 12(b)(2) and (6), on the basis that the contracts are unsigned. Further, the defendants ask the court to transfer the case if it rules in the plaintiff's favor on the Rule 12 Motion. For the reasons set forth herein, the defendants' Motion to Dismiss (Doc. No. 52) and their request to transfer this case will be denied.

## I.    FACTS & PROCEDURAL HISTORY

Plaintiff Robert J. Young Company, LLC ("RJ Young") has brought suit against defendants Zack Hemp LLC ("Zack Hemp") and WYZE I, LLC ("WYZE"),[1] alleging breach of contract (Count One) and, in the alternative, unjust enrichment (Count Two). (Sec. Am. Compl. ("SAC"), Doc. No. 46 at 1, ¶¶ 1–3, 36–48.) The plaintiff invokes this court's diversity jurisdiction under 28 U.S.C. § 1332(a). (*Id.* ¶ 5.) After initially failing to comply with Local Rule 7.02(b),

---

[1] The plaintiff voluntarily dismissed all of the other originally named defendants from this case. (Doc. No. 39.)

which requires parties in diversity cases to file a particular form stating their citizenship, the parties have mostly complied with the court's Order (Doc. No. 55), and the court is sufficiently confident that it has diversity jurisdiction to rule on the pending Motion.[2]

RJ Young, a Nashville-based company, alleges that, pursuant to ten lease agreements[3] the parties executed between October 2022 and June 2023,[4] it leased office and security equipment, including cameras and "door controllers," to the defendants and installed the security equipment in roughly a dozen of the defendants' stores in Mississippi, Tennessee, and Arkansas. (SAC ¶¶ 8–28; *see, e.g.*, Doc. No. 23-1 at 2–4.) The plaintiff alleges that, although it fully performed under the leases and has made "repeated demands" for payment, the defendants have made only partial payments on two leases and owe over one million dollars. (SAC ¶¶ 30–35.) The plaintiff seeks damages, costs, and fees. (*Id.* at 10–11.)

The defendants filed a Motion to Dismiss (Doc. No. 52), with an accompanying Memorandum (Doc. No. 52-1), to which the plaintiff filed a Response (Doc. No. 53), and in further support of which the defendants filed a Reply (Doc. No. 54). The defendants move for dismissal under Rules 12(b)(2) and (6) and, "[t]o the extent any claims survive dismissal," for transfer to the Northern District of Mississippi under 28 U.S.C. § 1404(a). (Doc. No. 52 at 1.)

The court observes some ambiguity in the SAC regarding the defendants' identities and what part, if any, WYZE played in the events giving rise to this case. (*Accord* SAC ¶ 4 (referring

---

[2] The court will address below the plaintiff's noncompliance with its Order.

[3] The plaintiff refers to the at-issue documents as "lease agreements" and refers to specific agreements by their "Contract" numbers (*e.g.*, SAC ¶ 9), while the defendants refer to the documents as "contracts," although they contend that they do not bind them (*e.g.* Doc. No. 52-1 at 1). The court perceives no difference between the two terms and uses both.

[4] The plaintiff filed the contracts, and other Exhibits, with the First Amended Complaint, but not the SAC. (Doc. No. 23-1–23-12.) The court will consider the Exhibits as though they were filed with the SAC, seeing no prejudice and without objection by the defendants.

2

to the "complex and interconnected nature of the Defendants' businesses and their owners/members").) For example, the SAC identifies one defendant as "Zack Hemp, LLC a/k/a and d/b/a Zak Hemp LLC or Zak Hemp, LLC WYLD Cannabis LLC" and the other defendant as "WYZE I, LLC f/k/a WYLD Cannabis LLC d/b/a Zak Hemp, LLC." (*Id.* ¶¶ 2–3.) Zack Hemp itself appears unsure about its name. After first stating that "Zak Hemp LLC is a defendant" (Doc. No. 52-1 at 4), it later contends that it is "incorrectly named in the Complaint as 'Zak Hemp LLC.'" (Doc. No. 58 at 6.)

As to WYZE's role, the SAC refers to the defendants collectively. (*See, e.g.*, SAC ¶ 8 ("RJ Young and Defendants entered into ten (10) lease agreements."); *id.* ¶ 7 ("Defendants have agreed to venue in this Court pursuant to the Lease Agreements."); *id.* ¶ 11 ("On December 13, 2022 Defendants executed the second lease agreement, Contract No. CDB012684.").) While, as the court will discuss, it appears that Zach Hemp's representative signed the at-issue contracts, no person specifically designated as a representative of WYZE, including its sole member, Nash Hassen (Doc. No. 57 at 6), signed any of the documents the plaintiff filed. Nor is it alleged that Zach Hemp had authority to bind WYZE to the terms of the lease agreements. On the other hand, the SAC alleges that the security equipment leased pursuant to the contracts was installed in stores "owned by or shar[ing] common ownership with the Defendants." (*See, e.g.*, SAC ¶¶ 10.) And the plaintiff alleges that WYZE was formerly known as "WYLD Cannabis LLC" (SAC ¶ 3), on whose behalf Zak Hassan *did* sign some of the at-issue lease agreements. (*See, e.g.*, Doc. No. 23-5 at 4.) In any case, the defendants make no relevant distinction between themselves in their briefs, and the court will not conjure arguments on WYZE's behalf.

Another ambiguity relates to two names that appear to refer to the same person: "Zak Hassan" and "Sakher Hassen." In its disclosure statement, Zach Hemp states that its sole member

is "Sakher Hassen." (Doc. No. 58 at 6.) Meanwhile, each handwritten signature on every lease agreement is accompanied by the typed name "Zak Hassan." (*See, e.g.*, Doc. No. 23-1 at 6.)[5] And, while some of the contracts' signatures are scribbles, others are sufficiently legible for the court to discern that they were signed by someone with the first name "Sakher." (*See* Doc. No. 23-2 at 6; Doc. No. 23-3 at 4.) In addition, the plaintiff has filed two October 2023 letters it received from defense counsel in this case, who states that he "represent[s] Zak Hassan" and refers to the "[p]urchase of cameras and other equipment [by] Zak Hemp LLC/Wyled Cannabis LLC." (Doc. No. 23-11 at 2.) Without explanation from the parties, the court infers that these two names refer to the same person.

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(2)

The plaintiff has the burden to make a *prima facie* showing that the court can exercise personal jurisdiction over each defendant, which he can do through the complaint. *Carbone v. Kaal*, 140 F.4th 805, 808 (6th Cir. 2025) (citations omitted). Thus, "the first question is whether the . . . complaint makes out a *prima facie* showing of jurisdiction." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). If the plaintiff makes a *prima facie* showing of personal jurisdiction, the burden shifts to the defendant, who must support his motion to dismiss for lack of personal jurisdiction with evidence. *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022). "The burden then returns 'to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has

---

[5] Despite the signature on each of these pages, the "Defendants do not concede that Zak Hassan signed the quotes." (Doc. No. 52-1 at 2 n.2; *see also* Doc. No. 54 at 2 n.1 (same).)

4

jurisdiction.'" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (quoting *Peters*, 40 F.4th at 437–38 (some internal quotation marks omitted)).

If the court does not hold an evidentiary hearing, as the court will not in this case,[6] "the plaintiff only has to make a *prima facie* case of personal jurisdiction." *Dorn v. Dominique*, No. 22-5620, 2023 WL 2543714, at *4 (6th Cir. Mar. 14, 2023) (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998)). This "burden is relatively slight." *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *2 (6th Cir. May 8, 2024) (internal quotation marks omitted) (quoting *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 901 (6th Cir. 2017)). "The court must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh 'the controverting assertions of the party seeking dismissal.'" *Ingram Barge Co. v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). However, the court "may consider the defendant's undisputed factual assertions." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citation omitted).

### B.      Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)) (alteration in *Marvaso*). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint has "facial plausibility when the plaintiff

---

[6] Neither party has requested an evidentiary hearing.

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### C. Section 1404(a)

Under 28 U.S.C. § 1404(a), even if venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This provision "give[s] district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerabo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citation omitted). District courts have "broad discretion" in making this determination. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

## III. ANALYSIS

### A. Rule 12(b)(2)

The defendants move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). (Doc. No. 52 at 1.) Generally, for a federal court sitting in diversity to exercise personal jurisdiction over a nonresident defendant, two requirements must be met: (1) the forum state's law must authorize jurisdiction; and (2) the exercise of jurisdiction must comport with the Fourteenth Amendment's Due Process Clause. *Air Prods.*, 503 F.3d at 550. Because Tennessee's long-arm statute extends the reach of personal jurisdiction to "[a]ny basis not inconsistent with the constitution of this state or of the United States," Tenn. Code Ann. §§ 20-2-214(a)(6), -225(2), these two inquiries "collapse into one," *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 567 (Tenn. 2023).

"Due process requires the defendant to possess certain minimum contacts with the forum State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023) (internal quotation marks

6

and citation omitted). However, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (citation omitted). And consent to personal jurisdiction through a forum selection clause "obviates the need to conduct a due-process and minimum-contacts analysis." *H.H. Franchising Sys., Inc. v. Brooker-Gardner*, No. 1:14-cv-651, 2015 WL 4464774, at *3 (S.D. Ohio July 21, 2015) (citing *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006)).

The plaintiff alleges that, pursuant to a permissive forum-selection clause in its contracts, the defendants[7] consented to this court's jurisdiction and to venue in this court. (SAC ¶¶ 6–7.) Indeed, paragraph 16 of each of ten agreements' "Lease Agreement Terms," entitled "Jurisdiction," includes a Tennessee choice-of-law provision and provides: "YOU AND ANY GUARANTOR EXPRESSLY AGREE TO: (A) BE SUBJECT TO THE PERSONAL JURISDICTION OF THE STATE OF TENNESSEE [AND] (B) ACCEPT VENUE IN ANY FEDERAL OR STATE COURT IN TENNESSEE." (*See, e.g.*, Doc. No. 23-1 at 10.)

The defendants contend, however, that "none of the ten alleged contracts are signed by any of the Defendants." (Doc. No. 52-1 at 2.) Nor, in fact, the defendants state, are they signed by anyone: "there is no signature at all on any of the alleged contracts." (*Id.*) Rather, according to the defendants, the "only signatures that appear on any of Documents 23-1 through 23-10 appear on one-page quotes included in each exhibit, which are not contracts." (*Id.*) The defendants make no further substantive argument on this point. (*See id.* at 4 ("Zak Hassan's name appears only on the

---

[7] As the court discussed above, the plaintiff does not clarify how defendant WYZE is bound by the forum-selection clause in the ten contracts it argues defendant Zach Hemp signed. But the defendants make no argument regarding WYZE specifically, and the plaintiff does allege that the defendants, at least in the past, used the same name.

7

quotes included in each Exhibit. Notably, there is no indication on the actual contracts that they were signed by Defendants.").) In essence, therefore, the defendants rely on a distinction between the "quotes" contained within each purported lease agreement, on the one hand, and the "actual contracts," which constitute some or all of the rest of the purported agreements, on the other. (*Id.* at 4.) That is, the defendants argue that, while the plaintiff contends that each of the ten Exhibits it has filed are contracts, in fact the portion of each Exhibit that contains a signature is not part of the *contract*, but rather a separate "quote" document Zak Hassan allegedly signed on behalf of Zach Hemp, which does not bind either defendant to the terms—including the forum-selection clause—contained elsewhere within the "actual contract."

The defendants' distinction requires some explanation. As the court discussed, the plaintiff alleges that the parties executed ten lease agreements between 2022 and 2023, which it has filed. (Doc. Nos. 23-1 through 23-10.) The agreements vary in some ways but in relevant part they are sufficiently similar for the court to discuss them collectively. Each agreement begins with a cover page indicating that it is a "Quote" and that it was prepared for either "Zak Hemp LLC WYLD Cannabis LLC" (Doc. Nos. 23-1 through 23-4 at 1) or "WYLD Cannabis LLC dba Zak Hemp LLC" (Doc. Nos. 23-5 through 23-10 at 1.) For example, the October 18, 2022 agreement is "Quote # CDB012175 Version 1." (Doc. No. 23-1 at 1.) The relevant "Quote #" appears in the footer of every page of every agreement. (*See, e.g.*, *id.* at 2–12 ("Quote #CDB012175").)[8]

Each agreement next lists the leased products and installation labor and their prices. For example, the October 18, 2022 agreement lists various kinds of security cameras, a "door controller," and "license[s]" for the equipment. (*Id.* at 2–3 (listing, for example, a "5 Year Alarm

---

[8] And in a section of the agreement entitled "Lease Agreement Terms," at the top of the page it says, "Contract Number CDB012175." (Doc. No. 23-1 at 7.)

8

License" for $4,199.30).) Then, several pages into each agreement is the total price for the equipment, labor, and shipping, presented as a monthly lease payment. For each agreement, the "payment option[]" is "Standard $1 Buyout: 60 Month Lease." (*See, e.g.*, *id.* at 6.) The court understands the agreement to permit the lessee to buy the equipment, at the end of the 60-month term, for $1. (*See, e.g.*, *id.* at 8 (stating, in a paragraph entitled, in relevant part, "Purchase Option," that the lessee "will have the option at the end of the initial or any renewal term to purchase all . . . of the Equipment at the Purchase Option price shown on page 1 [sic] of this Lease.").)

The section of the agreement that the defendants refer to as the "quotes" have the same titles as the cover pages. (*Compare, e.g.*, *id.* at 6 ("Verkada Solution – 5 YR"), *with id.* at 1 ("Verkada Solution – 5 YR).)[9] At the top of the page are the "Quote #," "delivery date," and "expiration date" (*see, e.g.*, *id.* at 6), the latter of which the court construes as the expiration date of the offer window. Each quote indicates that it was prepared for "Zak Hassan" of either "Zak Hemp LLC WYLD Cannabis LLC" or "WYLD Cannabis LLC dba Zak Hemp LLC." (*Contrast, e.g.*, Doc. No. 23-1 at 6, *with, e.g.*, Doc. No. 23-5 at 4.)

Immediately after the "quote," which is signed by the plaintiff's representative and Zak Hassan, the agreements contain a section entitled "Lease Agreement Terms," paragraph 16 of which contains the forum-selection clause. Other than the "quote," no other part of the agreements contain signatures or even spaces for signatures. Thus, it appears to the court that the parties did not contemplate that the agreements would be signed anywhere but on the page containing the monthly lease amount—the page the defendants refer to as the "quote." The defendants stress that the quotes "are not contracts." (Doc. No. 52-1 at 2.) In support of this contention, the defendants correctly state that the one-page quotes "bear different dates than the alleged contracts." (*Id.* (citing

---

[9] Verkada is the brand of some of the leased equipment. (*E.g.*, Doc. No. 23-1 at 2–3.)

9

Doc. Nos. 23-1 through 23-10).) Each page of the agreements contains a footer with the "Quote #," and the lease agreements are continuously paginated. The footers also contain a date, which, in every lease agreement, is earlier for the page containing the lease price—the quote—as the defendants point out. (*Contrast, e.g.*, Doc. No. 23-1 at 6 (including "Oct 14, 2022" in the footer of the quote), *with id.* at 2–5, 7–12 (including "Oct 18, 2022" in the footer).) On some agreements, the dates vary by one day. (*Contrast, e.g.*, Doc. No. 23-3 at 4 ("Dec 13, 2022"), *with id.* at 5 ("Dec 14, 2022.").) One varies by several weeks. (*Contrast* Doc. No. 23-9 at 6 ("May 16, 2023"), *with id.* at 2–5, 7–17 ("Jun 9, 2023").) One varies by years. (*Contrast* Doc. No. 23-2 at 6 ("Dec 13, 2022"), *with id.* at 2–5, 7–11 ("May 27, 2025).)

The defendants argue, for example, that the "quote attached as part of Exhibit 3 was dated and signed on December 13, 2022," but the "contract that is part of Exhibit 3 was not prepared until December 14, 2022, a day after the quote was signed." (Doc. No. 54 at 2.) That is, the defendants distinguish between the "quote," on which the signatures of the plaintiff's representative and Zak Hassan appear, and the "contract," which contains no signature. The defendants conclude that "signatures on the quotes do not, and cannot, bind the Defendants to the terms of later-prepared contracts, including provisions consenting to personal jurisdiction." (*Id.* at 2–3.) Even assuming that the defendants are correct on this point, the facts are not on their side in every instance. For example, on the first lease agreement, the quote is dated October 14, 2022, while the rest of the document is dated October 18, 2022. (Doc. No. 23-1.) But "Zak Hassan" signed it on October 18, as indicated by his handwritten date. (*Id.* at 6.) The same is true for at least one other contract. (*Compare* Doc. No. 23-6 at 5 (the quote page is dated "Mar 16, 2023" but signed March 20, 2023); *with id.* at 2–4, 6–11 (dated March 20, 2023).) Thus, construing the pleadings in the light most favorable to the plaintiff, as the court must, the defendants'

representative (or, at least, Zach Hemp's representative) signed the quote page of at least some of the lease agreements, including the earliest of the agreements the plaintiff filed, on the same day as the rest of the agreement was prepared.

In its Response, the plaintiff does not address the defendants' distinction between the "quote," which is signed, and the part of the lease that contains the forum-selection clause, which is unsigned. Instead, the plaintiff simply reiterates the allegations in the SAC and refers to the forum-selection clauses. (*See* Doc. No. 53 at 1–2 ("Defendants have consented to the Court's exercise of personal jurisdiction." (first citing SAC ¶ 7; and then citing Doc. Nos. 23-1 through 23-10)); *id.* (referring to the lease agreements, which were "executed by the Defendants under which they agreed to the Court's personal jurisdiction over them.").) The plaintiff then argues that it has met the low bar to make out a *prima facie* case of personal jurisdiction and that defendants have not submitted any evidence to shift the burden back to it. (*Id.* at 2–4.)

Other than its argument that the signatures appearing on the quotes predate the rest of the agreement, which was not true in the earliest agreement and at least one other, the defendants do not explain why the signature on the quote page cannot constitute assent to the forum-selection clause contained on the very next page. Nor do the defendants explain how, even if they were unaware of the lease terms, including the jurisdictional provision, after signing the first agreement, they continued to be ignorant of the jurisdictional provisions in each of the next nine agreements signed over the next many months.

As the court mentioned, the parties talk past each other on this issue. Construing the pleadings in the light most favorable to the plaintiff, and in the absence of any filings by the defendants to shift the burden to the plaintiff, the court finds that, based on the forum-selection clause, the plaintiff has met its "slight" burden to make out a *prima facie* case that the court has

11

personal jurisdiction over the defendants. *AMB Media*, 2024 WL 2052151, at \*2. Accordingly, the Motion will be denied to the extent it seeks dismissal based on lack of personal jurisdiction.

### B. Rule 12(b)(6)

The defendants repurpose their argument for dismissal on jurisdictional grounds as the sole basis for dismissal of the breach of contract claim on the merits. (*See* Doc. No. 54 at 3 ("For the same reason that there is no personal jurisdiction, the Plaintiff's breach of contract claims also fail."); Doc. No. 52-1 at 4 ("[N]one of the alleged contracts are signed by Defendants. Therefore . . . Plaintiff's breach of contract claims fail and must be dismissed.").) An enforceable contract "must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced." *Thompson v. Moody*, No. W2024-01225-COA-R3-CV, 2025 WL 355055, at \*2 (Tenn. Ct. App. Jan. 31, 2025) (quoting *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991)). Generally, the "legal mechanism by which parties show their assent to be bound is through offer and acceptance." *Id.* (quoting *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 675 n.8 (Tenn. Ct. App. 2007)). Here, the plaintiff has clearly alleged offer and acceptance, as well as performance. At this juncture, that is all that is required to allege the existence of a valid and enforceable contract.

For the reasons stated above, and accepting the allegations in the SAC as true and construing the facts in the light most favorable to the plaintiff, the court finds that the parties contracted for services for which the defendants have not paid.

In the alternative to its breach of contract claim, the plaintiff brings an unjust enrichment claim for which it argues it has stated a claim. (SAC ¶¶ 43–48; Doc. No. 53 at 4–7.) The defendants do not mention unjust enrichment in their briefs, let alone convincingly argue that the plaintiff has failed to state a claim. Lease agreements aside, the plaintiff alleges that the defendants did not pay

12

for the equipment the plaintiff installed in their stores. The Motion to Dismiss will be denied in all respects.

### C. Section 1404(a)

As the court noted above, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The defendants request that, "[t]o the extent any claims survive dismissal," they be transferred to the Northern District of Mississippi under 28 U.S.C. § 1404(a), "in the interest of justice and [for] the convenience of both parties and witnesses." (Do. No. 52 at 1.) The plaintiff makes no response to the request to transfer, but it is the defendants' heavy burden to show that transfer is appropriate, which they have not carried.

The court assumes without deciding that the case could have been brought in the Northern District of Mississippi. Once the court determines, as a threshold matter, that the case could have been brought in the transferee district, a "court ruling on a motion to transfer under 28 U.S.C. § 1404(a) should consider 'the private interests of the parties, including their convenience and the convenience of potential witnesses,' public-interest concerns, as well as whether the transfer is in the interests of justice." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). The private interests to be considered generally include:

> (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum.

*Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019) (Crenshaw, C.J.) (citations omitted). "Public-interest concerns" include such matters as "the enforceability of the judgment,

13

practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law." *Id.* The defendant bears the burden to show that the court should transfer the case, and, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 618 n.2 (6th Cir. 2025) (citation omitted), *cert. denied*, 223 L. Ed. 2d 556 (Jan. 20, 2026). As noted, this burden is "substantial." *Lalewicz v. WarnerMedia Direct, LLC*, 742 F. Supp. 3d 781, 785 (E.D. Tenn. 2024) (quoting *Sardeye v. Wal-Mart Stores E., LP*, No. 3:18-cv-01261, 2019 WL 4276990, at *3 (M.D. Tenn. Sept. 10, 2019) (Newbern, M.J.)).

The defendants state that it would be "in the interest of justice as well as the convenience of the parties and witnesses" to transfer the case to the Northern District of Mississippi. (Doc. No. 52 at 5.) In support of this contention, the defendants state that most of the events in question occurred in and around the Northen District of Mississippi and that the defendants are not in this district. (*Id.*) Further, they state that "[n]one of the alleged events occurred in the Middle District of Tennessee" and "[n]one of the witnesses is located in the Middle District of Tennessee." (Doc. No. 54 at 4.) The defendants have not met their heavy burden to show that the court ought to transfer this case. First, the defendants have not discussed most of the factors the court must weigh. Second, the defendants appear to ignore that the plaintiff is based in this district (SAC ¶ 1), and "transfer is inappropriate where it serves only to shift inconvenience from one party to the other." *Hardee's Rests. LLC v. Arbor Cap. Partners, LLC*, No. 3:25-cv-01135, 2026 WL 1223680, at *10 (M.D. Tenn. May 5, 2026) (citing *Sacklow*, 377 F. Supp. 3d at 877). Accordingly, the court will not transfer this case.

### D. Diversity Jurisdiction

Federal Rule of Civil Procedure 7.1 provides that, in an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), as here, "a party . . . must, unless the court orders otherwise, file a disclosure statement," which "must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party." Fed. R. Civ. P. 7.1(a)(2). As the court explained in its previous Order, when business entities appear in diversity cases, the Local Rules require them to file two forms: the "Business Entity Disclosure Statement," required of business entities in every case, L.R. 7.02(a), and the "Rule 7.1(a)(2) Disclosure Statement," required of parties in diversity cases. L.R. 7.02(b). (*See* Doc. No. 55 at 2 & n.3.)

The plaintiff invokes this court's subject-matter jurisdiction solely under 28 U.S.C. § 1332(a), on the basis of complete diversity of citizenship among the parties and the requisite amount in controversy. (SAC ¶ 5.) But, as the court explained in its previous Order, the plaintiff did not allege sufficient facts for the court to discern the parties' citizenship; nor did any party comply with Local Rule 7.02(b) by filing a Rule 7.1(a)(2) Disclosure Statement, on which they ought to have provided their members' citizenship.

Because the parties did not comply with the Local Rules, the court ordered the parties to "comply with Local Rule 7.02(b) by filing *the Rule 7.1(a)(2) Disclosure Statement* located on the court's website." (Doc. No. 55 at 3 (emphasis added).) "Specifically," the court continued, the parties were ordered to "list their members and their citizenship, and if any members are LLCs or trusts, their memberships or trustees and those members' and trustees' *citizenship*." (*Id.* at 3–4 (emphasis added).) The defendants filed the forms the court ordered. (Doc. Nos. 57–58.)[10] But

---

[10] Although, as the court noted, the defendants did not file Business Entity Disclosure Statements as Local Rule 7.02(a) requires. (Doc. No. 55 at 2 n.3.) They still have not.

15

despite Federal Rule of Civil Procedure 7.1(a)(2), Local Rule 7.02(b), and this court's Order specifying which form to submit and what information to include, the plaintiff re-submitted the Business Entity Disclosure Form, required by Local Rule 7.02(a), rather than the Rule 7.1(a)(2) Disclosure Statement, required by Local Rule 7.02(b). (Doc. No. 56.) Most problematic, the plaintiff did not aver the citizenship of its members.

Limited liability companies, including all of the parties in this case, have the citizenship of their members and sub-members. *Akno 1010 Mkt. Street St. Louis Mo. LLC v. Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022) (citing *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009)). Each defendant has exactly one member, a Mississippi citizen. (Doc. No. 57 at 6 (WYZE: Nash Hassen); Doc. No. 58 at 6 (Zack Hemp: Sakher Hassen).) Trusts have the citizenship of their trustees. *Halbower Tr. of Halbower Legacy Tr. v. Hiscox Syndicate 33 of Lloyd's of London*, No. 25-1152, --- F.4th ----, 2026 WL 1506516, at *3 (6th Cir. May 29, 2026) (citations omitted). The plaintiff's six members are trusts that share the same trustee: a natural person whose "[s]tate of [r]esidency" is Tennessee. (Doc. No. 56 at 3.) The plaintiff has thereby informed the court of its trusts' trustee's *residence*, not his *citizenship*, even though "it has long been settled that residence and citizenship are wholly different things." *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019) (alteration adopted) (quoting *Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905)). "[C]itizenship for purposes of 28 U.S.C. § 1332(a) means domicile rather than residence." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973) (citations omitted). Furthermore, a person can reside in more than one state but can have only one citizenship. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) ("An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State.") (citations omitted). The plaintiff's averment of residency, therefore,

16

does not establish citizenship and does not guarantee that there is diversity of citizenship, the sole purported basis of this court's subject-matter jurisdiction. *See Kelly v. Metro. Grp. Prop. & Cas. Ins. Co.*, 810 F. App'x 377, 379 (6th Cir. 2020) (noting that "an allegation of residence 'does not aver citizenship'" (quoting *Prime Rate*, 930 F.3d at 765)). Rather, "to comply with § 1332, an individual must allege where she is domiciled to establish citizenship in that state, *or else the court must dismiss the suit*." *Id.* (emphasis added) (citing *Prime Rate*, 930 F.3d at 765). While in all likelihood the plaintiffs' trusts' trustee is a citizen of Tennessee, the court will require the plaintiff to file the correct form and state as much. The court is displeased to have twice addressed an issue it would not have needed to address at all if the parties had complied with the Local Rules.

## IV. CONCLUSION

For the foregoing reasons, the court will deny the Defendants' Motion to Dismiss (Doc. No. 52) and their request that the court transfer this case.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge

17